**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MYLAN T. NEWBERN, Y21883,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 26-cv-881-DWD** |
| | ) | |
| **LATOYA HUGHES,** | ) | |
| **ANTHONY WILLS,** | ) | |
| **ANDREW S. STORY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Mylan Newbern, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Hill Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center (Menard). (Doc. 1). Plaintiff alleges that the defendants violated his rights by maintaining policies that led to an inmate severely attacking him, and by failing to intervene in the attack. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. §

1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**The Complaint**

Plaintiff alleges that on January 25, 2025, he was escorted to the shower area pursuant to a policy from Defendant Wills that required inmates to be handcuffed behind their back on the way to the shower. The policy also dictated that the inmates would be uncuffed one-by-one via a cuff port once they were secured behind a gate. Plaintiff alleges that while waiting in the line for Defendant Story to uncuff him, an inmate who had already been uncuffed attacked out of the blue, striking his face, head, chest, and stomach. (Doc. 1 at 7). Plaintiff alleges that Story did not initially react and just stood there. Plaintiff claims that even when he yelled to Story that he was cuffed and moved towards Story for assistance, Story did nothing.

Plaintiff claims he was eventually unable to bear the attack, so he began kicking his attacker while shouting for help. (Doc. 1 at 8). When other staff noticed the ruckus, they directed Story to deploy pepper spray. Plaintiff alleges Story then deployed multiple "excessively long" bursts of pepper spray until his attacker stopped. Plaintiff alleges Story's actions were improper because Story knew he was cuffed behind his back and did nothing to remove him from the physical battering or the pepper spray. Plaintiff alleges that Story later indicated he did not believe in touching inmates, which is why he did not immediately intervene. Plaintiff alleges he was hospitalized with a fractured jaw.

Plaintiff faults Defendant Wills for maintaining the handcuffing policy for showers, alleging that Wills constantly received disciplinary tickets or grievances that

showed him the policy led to many attacks. He further alleges that Wills knew inmates were taking advantage of the policy to attack others, but despite knowing these risks, he did not change the policy. Additionally, Plaintiff faults Defendant Hughes, the IDOC Director, for maintaining a policy that strictly prohibits inmates from using self-defense, and that disciplines inmates for defending themselves in unprovoked attacks. He alleges that Hughes routinely received disciplinary reports or grievances which notified her that the no self-defense policy caused serious injuries, and that it has allowed violent inmates to prey upon rule-following inmates who do not want to be disciplined. Plaintiff further claims that Hughes knows the policy can lead to consequences that impact clemency petitions, such as his own. He faults Hughes for knowing of the many bad impacts of the policy and failing to change it.

Plaintiff designated his own enumerated claims, which the Court adopts as follows:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Hughes and Wills for creating and maintaining the no self-defense and rear-cuffing for showers policies that he claims caused him danger and harm in January of 2025;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendant Story for failing to intervene or protect Plaintiff from the attack;**

**Claim 3:** **Eighth Amendment excessive force claim against Defendant Story for using more pepper spray than needed;**

**Claim 4:** **Illinois state law negligence claim against Defendants Wills, Hughes, and Story for owing Plaintiff a duty and breaching it;**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**Analysis**

**Claim 1**

It is not entirely clear if Plaintiff seeks to hold Hughes and Wills liable in their official capacity as those responsible for the policies he describes, or if he seeks to hold them liable in their individual capacity for their roles in applying the policies he describes. To the extent that Plaintiff faults Hughes and Monti for their actions as policymakers, these allegations fall under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Defendants Hughes and Wills are both state employees named in their official capacity so the Court must consider if they are even subject to this claim because the IDOC is protected from suit by sovereign immunity under the Eleventh Amendment. *See* *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012) ("plaintiff sued the defendants in their official capacity, and so the lawsuit is against a state agency"). The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees acting in

their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law."). In short, Plaintiff may only proceed against Hughes and Wills in their official capacity if he seeks injunctive relief from them in relation to the policies he has identified.

In the demand for relief, Plaintiff does not seek injunctive relief. Additionally, the Court notes that Plaintiff states in his complaint that Defendant Wills is now retired and is no longer the Warden at Menard, mooting Wills' ability to grant any injunctive relief at Menard. Plaintiff also recently filed a change of address, indicating he has been moved from Menard to Hill Correctional Center, further mooting his access to injunctive relief. While it is theoretically still possible that Plaintiff could seek injunctive relief from Hughes for an IDOC-wide policy, he has not asked for it in the demand for relief, and at a minimum, he would need to demonstrate how the issues with the policies Hughes maintains about self-defense create an ongoing danger at his new facility. Thus, to the extent that Claim 1 against Hughes and Wills relies on official capacity, it is insufficient to proceed.

Alternatively, to the extent that Plaintiff is attempting to hold Hughes or Wills liable for their personal actions under the Eighth Amendment, his allegations are too

vague. Plaintiff's assertions seem most similar to a claim that Hughes and Wills failed to protect him. To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). Instead, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago*, 599 F.3d at 756. "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

Here, Plaintiff's allegations are premised entirely on a generalized risk of danger at the prison. He claims that Wills was aware of the danger from his handcuff policy because he received disciplinary reports and grievances about it, and Hughes was aware of the danger from the no self-defense policy because she got disciplinary reports and grievances about it, but at most these assertions support a generalized risk of danger at the prison which is not sufficient to sustain a failure to protect claim. Without any

assertion that Plaintiff ever attempted to alert Wills or Hughes to his concerns about these policies, or the dangers the policies posed to him, he cannot hold them personally liable for the harm he sustained.

**Claim 2**

Plaintiff faults Defendant Story for failing to intervene once the assault began. Ultimately, "immediate intervention in an inmate-on-inmate assault is not necessary," but an officer in the presence of an assault must respond reasonably in their effort to end the altercation. *See* *Eddmonds v. Walker*, 317 Fed. App'x 556, 558-59 (7th Cir. 2009) (collecting cases on a guard's obligation to intervene). Story allegedly stood and watched the fight and did not begin to deploy pepper spray to intervene until other nearby guards urged him to act. Plaintiff also alleges that Story later made comments about preferring to merely watch and let inmates resolve issues themselves. At this preliminary juncture, these allegations are sufficient to sustain a theory of failure to intervene.

**Claim 3**

Plaintiff also faults Defendant Story for using excessive force by deploying more pepper spray than was necessary, and deploying it against Plaintiff despite knowing Plaintiff was restrained behind his back. An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). With an active fight,

there was a clear need to restore discipline, but there could still arguably be a question intertwined with the failure to intervene about if the amount or manner of the pepper spray used towards Plaintiff was appropriate, or whether it was excessive and thus malicious or sadistic. Claim 3 may proceed against Story.

**Claim 4**

In Claim 4, Plaintiff faults Defendants Hughes, Wills, and Story for owning him a duty of care and breaching that duty. To bring a negligence claim under Illinois state law, a plaintiff must allege facts suggesting that the defendant owed him a duty of care, breached the duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). Plaintiff's allegations in Claim 4 are entirely threadbare. (Doc. 1 at 10). Plaintiff plainly alleged: "Latoya Hughes, Anthony Wills and Andrew S. Story breach the duty of care owed to me under Illinois state law and that breach resulted in harm there by violating Illinois state law of negligence." Merely reciting the legal elements of a claim is insufficient to proceed. *See e.g.*, *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (threadbare recitals of a cause of action, supported by conclusory statements, do not suffice to pelad an adequate claim). Accordingly, Claim 4 is dismissed as insufficiently pled.

**MOTION FOR RECRUITMENT OF COUNSEL**

Plaintiff argues that he has a high school education, but no experience with civil litigation. (Doc. 13 at 2). When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing

so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). Plaintiff states that he wrote multiple attorneys, and he provided proof of his efforts. (Doc. 13 at 1, 3-7).

The Court must also consider if Plaintiff is competent to litigate this matter himself. The complaint bears a clear statement from a fellow inmate that he helped Plaintiff draft the document (Doc. 1 at 10), but the statement does not indicate that Plaintiff has any barriers to basic literacy or any other factor that might make it difficult for Plaintiff to proceed on his own. Instead, in the complaint and in the motion for counsel, Plaintiff merely indicates he has no civil litigation experience. Most pro se litigants have little to no experience representing themselves, but this alone does not warrant the appointment of counsel. The Court considers the complexity of the case, plaintiff's detention status and location, specific factors that might impact a plaintiff's ability to read, write, or communicate clearly, and plaintiff's ability to proceed without the help of others, among other things. One key consideration is the complexity of the claims and evidence that will be needed, and the stage of the litigation.

This case is still at the earliest stages of the litigation. Because the Court determined that Plaintiff has claims sufficient to proceed, it will now conduct service, and

the Defendant will be required to file an answer. Before Plaintiff is required to take further action in the case, the Court will issue a detailed scheduling order describing the next steps. In most inmate-filed cases, the first scheduling order deals with the exhaustion of administrative remedies, which is usually something that an inmate can navigate relying on his own knowledge and experience with the grievance process in the prison system. Given the phase of the litigation, and the basic tasks that lie ahead, the Court believes Plaintiff can navigate matters on his own at this early juncture, so his motion will be denied. If Plaintiff later renews his motion, he must be more specific about the tasks that he is having difficulty completing on his own.

## Disposition

**IT IS HEREBY ORDERED THAT Claims 2-3** of the Complaint (Doc. 1) survive against Defendant Andrew Story. By contrast, **Claims 1 and 4** are insufficient to state a claim. The Clerk of Court shall **TERMINATE** Defendants Wills and Hughes for Plaintiff's failure to state a claim against them.

The Clerk of Court is **DIRECTED** to prepare for Defendant Andrew Story: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the

Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 13) is **DENIED** without prejudice, and his Motion for Status (Doc. 14) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: October 15, 2026

Judge Dugan

Digitally signed by Judge Dugan
Date: 2026.10.15 10:00:09 -05'00'

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.